**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------------------x
:
In re:                                                          :    Chapter 11
:
HO WAN KWOK, *et al.*,[1]                                        :    Case No. 22-50073 (JAM)
:
                                    Debtors.                    :    (Jointly Administered)
:
------------------------------------------------------------------x
:
LUC A. DESPINS, CHAPTER 11                                      :
TRUSTEE,                                                        :    Adv. Proceeding Nos. 24-05005, 24-05006, 24-
                                                               :    05007, 24-05008, 24-05009, 24-05010, 24-05011,
                                    Plaintiff,                  :    2405012, 24-05013, 24-05014, 24-05015, 24-
v.                                                             :    05016, 24-05017, 24-05018, 24-05019, 24-05020,
                                                               :    2405021, 24-05022, 24-05023, 24-05024, 24-
                                                               :    05025, 24-05026, 24-05027, 24-05028, 24-05029,
AVOIDANCE DEFENDANTS                                            :    2405030, 24-05031, 24-05032, 24-05033, 24-
                                                               :    05034, 24-05035, 24-05036, 24-05037, 24-05038,
                                    Defendants.                 :    2405039, 24-05040, 24-05041, 24-05042, 24-
                                                               :    05043, 24-05044, 24-05045, 24-05046, 24-05047,
                                                               :    2405048, 24-05049, 24-05050, 24-05051, 24-
                                                               :    05052, 24-05053, 24-05054, 24-05055, 24-05056,
                                                               :    2405057, 24-05058, 24-05059, 24-05060, 24-
                                                               :    05061, 24-05062, 24-05063, 24-05064, 24-05065,
                                                               :    2405066, 24-05067, 24-05068, 24-05069, 24-
                                                               :    05070, 24-05071, 24-05072, 24-05073, 24-05074,
                                                               :    2405075, 24-05076, 24-05077, 24-05078, 24-
                                                               :    05079, 24-05080, 24-05081, 24-05082, 24-05083,
                                                               :    2405084, 24-05085, 24-05086, 24-05087, 24-
                                                               :    05088, 24-05089, 24-05090, 24-05091, 24-05092,
                                                               :    2405093, 24-05094, 24-05095, 24-05096, 24-
(caption continues on next page)                               :    05097, 24-05098, 24-05099, 24-05100, 24-05101,
                                                               :    2405102, 24-05102, 24-05103, 24-05104, 24-
                                                               :    05105, 24-05106, 24-05107, 24-05108, 24-05109,

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

24-05110, 24-05111, 24-05112, 24-05113, 24-05114, 24-05115, 24-05116, 24-05117, 24-05118, 2405119, 24-05120, 24-05121, 24-05122, 24-05123, 24-05124, 24-05125, 24-05126, 24-05127, 2405128, 24-05129, 24-05130, 24-05131, 24-05132, 24-05133, 24-05134, 24-05135, 24-05136, 2405137, 24-05138, 24-05139, 24-05140, 24-05141, 24-05142, 24-05143, 24-05144, 24-05145, 2405146, 24-05147, 24-05148, 24-05149, 24-05150, 24-05151, 24-05152, 24-05153, 24-05154, 2405155, 24-05156, 24-05157, 24-05158, 24-05159, 24-05160, 24-05161, 24-05162, 24-05163, 2405164, 24-05165, 24-05166, 24-05167, 24-05168, 24-05169, 24-05170, 24-05171, 24-05172, 2405173, 24-05174, 24-05175, 24-05176, 24-05177, 24-05178, 24-05179, 24-05180, 24-05181, 2405182, 24-05183, 24-05184, 24-05185, 24-05186, 24-05187, 24-05188, 24-05189, 24-05190, 2405191, 24-05192, 24-05193, 24-05194, 24-05195, 24-05196, 24-05197, 24-05198, 24-05199, 2405200, 24-05201, 24-05202, 24-05203, 24-05204, 24-05205, 24-05206, 24-05207, 24-05208, 2405209, 24-05210, 24-05211, 24-05212, 24-05213, 24-05214, 24-05215, 24-05216, 24-05217, 2405218, 24-05219, 24-05220, 24-05221, 24-05222, 24-05223, 24-05224, 24-05225, 24-05226, 2405227, 24-05228, 24-05229, 24-05230, 24-05231, 24-05232, 24-05233, 24-05234, 24-05235, 2405236, 24-05237, 24-05238, 24-05239, 24-05240, 24-05241, 24-05242, 24-05243, 24-05244, 2405245, 24-05246, 24-05247, 24-05248, 24-05250, 24-05251, 24-05252, 24-05253, 24-05254, 2405255, 24-05256, 24-05257, 24-05258, 24-05259, 24-05260, 24-05261, 24-05262, 24-05263, 2405264, 24-05265, 24-05266, 24-05267, 24-05268, 24-05269, 24-05270, 24-05271, 24-05272, 24-05274, 24-05275, 24-05276, 24-05279, 24-05280

-------------------------------------------------------------x

**NOTICE OF FILING MOTION OF CHAPTER 11 TRUSTEE TO EXTEND AUGUST 15, 2024 DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS**

Luc A. Despins, in his capacity as Chapter 11 Trustee (the "Trustee") for the debtor Ho Wan Kwok (the "Debtor"), hereby files this notice of the filing of the *Motion of Chapter 11 Trustee to Extend August 15, 2024 Deadline for Trustee to File Avoidance Actions* [Main Case Docket No. 3329] (the "Motion") in the Debtor's above-captioned chapter 11 case.  A true and accurate copy of the Motion is attached hereto as **Exhibit A**.

Dated:  July 22, 2024                LUC A. DESPINS
       New Haven, CT           CHAPTER 11 TRUSTEE


By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com
    *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------x

In re:                                          :        Chapter 11
                                                :
HO WAN KWOK, *et al.*,[2]                       :        Case No. 22-50073 (JAM)
                                                :
                        Debtors.                :        (Jointly Administered)
                                                :
---------------------------------------------------------------x
                                                :
LUC A. DESPINS, CHAPTER 11                      :        Adv. Proceeding Nos. 24-05005, 24-05006, 24-
TRUSTEE,                                         :        05007, 24-05008, 24-05009, 24-05010, 24-05011,
                                                :        2405012, 24-05013, 24-05014, 24-05015, 24-
                        Plaintiff,              :        05016, 24-05017, 24-05018, 24-05019, 24-05020,
v.                                              :        2405021, 24-05022, 24-05023, 24-05024, 24-
                                                :        05025, 24-05026, 24-05027, 24-05028, 24-05029,
AVOIDANCE DEFENDANTS                            :        2405030, 24-05031, 24-05032, 24-05033, 24-
                                                :        05034, 24-05035, 24-05036, 24-05037, 24-05038,
                        Defendants.             :        2405039, 24-05040, 24-05041, 24-05042, 24-
                                                :        05043, 24-05044, 24-05045, 24-05046, 24-05047,
                                                :        2405048, 24-05049, 24-05050, 24-05051, 24-
                                                :        05052, 24-05053, 24-05054, 24-05055, 24-05056,
                                                :        2405057, 24-05058, 24-05059, 24-05060, 24-
                                                :        05061, 24-05062, 24-05063, 24-05064, 24-05065,
                                                :        2405066, 24-05067, 24-05068, 24-05069, 24-
                                                :        05070, 24-05071, 24-05072, 24-05073, 24-05074,
                                                :        2405075, 24-05076, 24-05077, 24-05078, 24-
                                                :        05079, 24-05080, 24-05081, 24-05082, 24-05083,
                                                :        2405084, 24-05085, 24-05086, 24-05087, 24-
                                                :        05088, 24-05089, 24-05090, 24-05091, 24-05092,
                                                :        2405093, 24-05094, 24-05095, 24-05096, 24-
(caption continues on next page)               :        05097, 24-05098, 24-05099, 24-05100, 24-05101,
                                                :        2405102, 24-05102, 24-05103, 24-05104, 24-
                                                :        05105, 24-05106, 24-05107, 24-05108, 24-05109,

---

[2]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

: 24-05110, 24-05111, 24-05112, 24-05113, 24-
: 05114, 24-05115, 24-05116, 24-05117, 24-05118,
: 2405119, 24-05120, 24-05121, 24-05122, 24-
: 05123, 24-05124, 24-05125, 24-05126, 24-05127,
: 2405128, 24-05129, 24-05130, 24-05131, 24-
: 05132, 24-05133, 24-05134, 24-05135, 24-05136,
: 2405137, 24-05138, 24-05139, 24-05140, 24-
: 05141, 24-05142, 24-05143, 24-05144, 24-05145,
: 2405146, 24-05147, 24-05148, 24-05149, 24-
: 05150, 24-05151, 24-05152, 24-05153, 24-05154,
: 2405155, 24-05156, 24-05157, 24-05158, 24-
: 05159, 24-05160, 24-05161, 24-05162, 24-05163,
: 2405164, 24-05165, 24-05166, 24-05167, 24-
: 05168, 24-05169, 24-05170, 24-05171, 24-05172,
: 2405173, 24-05174, 24-05175, 24-05176, 24-
: 05177, 24-05178, 24-05179, 24-05180, 24-05181,
: 2405182, 24-05183, 24-05184, 24-05185, 24-
: 05186, 24-05187, 24-05188, 24-05189, 24-05190,
: 2405191, 24-05192, 24-05193, 24-05194, 24-
: 05195, 24-05196, 24-05197, 24-05198, 24-05199,
: 2405200, 24-05201, 24-05202, 24-05203, 24-
: 05204, 24-05205, 24-05206, 24-05207, 24-05208,
: 2405209, 24-05210, 24-05211, 24-05212, 24-
: 05213, 24-05214, 24-05215, 24-05216, 24-05217,
: 2405218, 24-05219, 24-05220, 24-05221, 24-
: 05222, 24-05223, 24-05224, 24-05225, 24-05226,
: 2405227, 24-05228, 24-05229, 24-05230, 24-
: 05231, 24-05232, 24-05233, 24-05234, 24-05235,
: 2405236, 24-05237, 24-05238, 24-05239, 24-
: 05240, 24-05241, 24-05242, 24-05243, 24-05244,
: 2405245, 24-05246, 24-05247, 24-05248, 24-
: 05250, 24-05251, 24-05252, 24-05253, 24-05254,
: 2405255, 24-05256, 24-05257, 24-05258, 24-
: 05259, 24-05260, 24-05261, 24-05262, 24-05263,
: 2405264, 24-05265, 24-05266, 24-05267, 24-
: 05268, 24-05269, 24-05270, 24-05271, 24-05272,
: 24-05274, 24-05275, 24-05276, 24-05279, 24-
: 05280
---------------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

The foregoing, including all attachments thereto, was filed on the date hereof in the above-captioned adversary proceedings using the Court's electronic case files/case management system ("<u>CM/ECF</u>").  Notice was sent on the date of filing to all parties appearing in the above-captioned adversary proceedings automatically via email by operation of CM/ECF.

Dated:  July 22, 2024                              LUC A. DESPINS
        New Haven, CT                        CHAPTER 11 TRUSTEE


By: */s/ Patrick R. Linsey*_____
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com
    *Counsel for the Chapter 11 Trustee*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
                                        :

In re:                           :     Chapter 11
                                           :

HO WAN KWOK, *et al.*,[1]      :     Case No. 22-50073 (JAM)
                                         :

        Debtors.            :     (Jointly Administered)
                                         :
------------------------------------------------------x

## FIRST SUPPLEMENTAL MOTION OF CHAPTER 11 TRUSTEE TO EXTEND AUGUST 15, 2024 DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS

Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") appointed in the chapter 11 case of Ho Wan Kwok (the "<u>Debtor</u>"), by and through his undersigned counsel, hereby files this motion (the "<u>Motion</u>"), pursuant to section 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for an order, substantially in the form of the proposed order attached as **<u>Exhibit 1</u>** hereto (the "<u>Proposed Order</u>"), extending the Ordered Extension (as defined below) for the Trustee to commence avoidance actions. In support of the Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.       Six months ago, in February 2024, the Court granted the Trustee's motion and extended the limitations periods for the Trustee to file avoidance actions. At the time, the Court

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

found that "the Trustee has shown more than reasonable diligence in his efforts" to unravel the intricacies of the Debtor's assets and financial affairs. As discussed below, that remains true today. The Trustee has continued to make significant progress, on both the litigation front and the discovery front. He has obtained rulings bringing valuable assets and entities into the estate; in many cases, those victories (especially alter ego rulings) lead to additional discovery that will, in turn, likely lead to further affirmative recoveries on behalf of the Debtor's creditors.

2.      The Trustee has also launched an extensive mediation process, in which over 50 parties (to-date) are participating. And, since entry of the Extension Order (as defined herein), the Trustee has (among other things) learned new information about, among other things, the Debtor's international activities and filed additional omnibus Rule 2004 motions and served additional subpoenas. The Trustee has also continued his forensic accounting analysis of the Debtor's vast shell game and his forensic accounting firm, Kroll, has identified an additional 207 Kwok-related bank accounts (bringing the total to approximately 546 accounts) and approximately 88,580 transactions in and out of these accounts. Kroll has also tracked approximately $12.2 billion coming in to, and $9.1 billion going out of, those accounts.

3.      When the Trustee filed his original Extension Motion, he explained that this case—which already presents the difficulties inherent in wading through the aftermath of a largescale, international, fraud—was further complicated by the significant, and unending, stream of impediments placed in the Trustee's way by the Debtor and his associates. As this Court well knows, those impediments include the Debtor's failure to provide the Trustee with any books and records and his (and his associates) failure to comply with multiple Court orders. Unfortunately, that has not changed. The Debtor has not changed course and suddenly decided

to cooperate with the Trustee (as required by the Bankruptcy Code).  Just the opposite, he and his associates have continued to actively attempt to derail and delay the Trustee's efforts.

4.      Another factor outside of the Trustee's control was the Debtor's recently completed criminal trial, which required the Trustee to curtail certain aspects of his investigation and recovery efforts.  But the criminal trial has delayed the Trustee's investigation in other ways, as well.  For one, over the course of the trial, the Trustee has learned important information that he had not learned in discovery, which information will lead to more stones for the Trustee to turn over and, hopefully, to more assets recovered for the estate.  Additionally, the criminal trial has further demonstrated the extent of the Debtor's obstruction and dishonesty since he filed his voluntary chapter 11 case over two years ago.

5.      Ultimately, what was true in February remains true now: while the Trustee has continued to assemble many pieces of the puzzle, he has been unable to complete the puzzle. His investigation and recovery efforts have been impeded by factors outside his control, including the incredibly complex nature of this case, which complexity is exacerbated by the Debtor's obstructions.

6.      Equally true is that the relief requested herein remains vital.  Absent an extension, the Trustee will be forced to litigate the limitations period on a one-off basis in a free-standing adversary proceeding with any potential defendant who raises the issue.  This is not just difficult; it is likely impossible—the Trustee has already identified over 172,400 transfers.  Moreover, the cost, both in time and dollars, would be astronomical, and would directly harm creditors. Finally, the uncertainty would put the Trustee—who has to defend all of his actions and has already had to defend a motion seeking his removal as well as other scurrilous accusations—in an untenable position moving forward.

## **BACKGROUND**

7.        On February 15, 2022, the Debtor filed with the Court a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.

On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured

Creditors (the "Committee") in the Debtor's chapter 11 case.

8.        On June 15, 2022, the Bankruptcy Court entered a memorandum of decision and

order [ECF No. 465] directing the United States Trustee to appoint a chapter 11 trustee.  On July

8, 2022, the Bankruptcy Court entered an order [ECF No. 523] appointing the Trustee.

### **a.   Extension Motion and Extension Order**

9.        The Debtor's bankruptcy schedules, filed in March 2022, claimed only $3,850 in

assets compared to hundreds of millions of dollars of liabilities.[2]  The Debtor asserted in the

Bankruptcy Court that he was essentially penniless and that his luxurious homes, the Lady May

yacht, and his other publicly flaunted trappings of wealth did not belong to him, but to

companies purportedly owned by his family members.[3]  As several courts have now observed,

the Debtor was able to maintain his opulent lifestyle while professing to own virtually no assets

by constructing a vast maze of shell companies in which he hid his wealth in the names of family

members and close associates.

10.        Since his appointment, the Trustee has been working diligently to identify and

recover for the benefit of the estate the assets the Debtor has hidden and/or transferred.  To that

end, in accordance with the Court's directive, the Trustee has launched a complex and thorough

investigation and litigation process, focusing on the Debtor's "shell game"—*i.e.*, his use of alter

ego companies to hide his assets from creditors.  Broadly speaking, the process has included (a)

---

[2]        *See* Schedules of Assets & Liabilities, at 1 [ECF No. 78].
[3]        *See Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* [ECF No. 107].

discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) litigation to establish that certain entities are alter egos of the Debtor and/or recover specific property and assets.

11.     Locating and recovering the Debtor's assets has required the Trustee to retain attorneys in multiple jurisdictions, as well as other professionals, such as Kroll, LLC ("Kroll"), a forensic accounting firm with international reach.  Unraveling the Debtor's maze of shell companies and tens of thousands of transactions (on its own, a hugely complex task) was further complicated and delayed by the efforts of the Debtor, his family members, and his associates to obstruct the Trustee's efforts at every turn.  Accordingly, on January 18, 2024, the Trustee filed a motion to extend or toll certain statutes of limitations that would have expired on February 15, 2024 (the "Extension Motion").[4]  The Extension Motion contained (and this Motion incorporates by reference) a detailed description of the Trustee's efforts and successes to that date, as well as the various obstruction efforts with which the Trustee had been forced to contend.

12.     On February 15, 2024, the Court issued an opinion and order granting the Extension Motion [Docket No. 2921] under Bankruptcy Rule 9006(b) [Docket No. 2921] (the "Extension Order").  The Court extended the Trustee's time to commence avoidance actions through August 15, 2024 (the "Ordered Extension"), and provided that such date is subject to further extension.

**b.  Developments Since Extension Order**

13.     On March 4, 2024, the Trustee filed a motion seeking a stay of adversary proceeding and related relief [Docket No. 2975] because, as a practical matter, the Trustee had no choice but to stay certain aspects of his investigation given the impending (and now

---

[4]     *See* Docket No. 2509, *Motion for Entry of Order Extending Deadline for Trustee to File Avoidance Actions Under Bankruptcy Code Sections 108, 546(a), and 549.*

completed) criminal trial.  As explained in the stay motion, the Trustee had filed approximately

270 adversary proceedings, as well as the Civil RICO Action and Omnibus Alter Ego Complaint.

The Trustee requested a stay of the Civil RICO Action and Omnibus Alter Ego Complaint based

on important case-management considerations and the concern that deposition of certain parties

may have inadvertently interfered with the Government's prosecution in the Debtor's (at the

time) upcoming criminal trial.  Additionally, in response to the Trustee's complaints, particularly

the Civil RICO Action and Omnibus Alter Ego Complaint, the Debtor had renewed his motion

for a global stay of the Chapter 11 Case, asserting that the Trustee's pursuit of those claims

would interfere with his criminal defense rights.  While the Trustee objected to the Debtor's

motion for a global stay, he advised the criminal court that he would seek a more tailored stay,

which would moot the Debtor's arguments.

14.    No party objected to the Trustee's motion and the Court entered the "<u>Stay Order</u>"

on March 22, 2024.[5]  [Docket No. 3038].  Among other things, the Stay Order stayed the Civil

RICO Action and the Omnibus Alter Ego Action through the conclusion of the Debtor's criminal

trial (the "<u>Stay Period</u>") and provided that no depositions would occur pursuant to Bankruptcy

Rule 2004 or in any adversary proceeding during the Stay Period.

15.    Because of the Stay Order, and the underlying criminal trial, the Trustee's

investigation and litigation efforts have proceeded at a relatively measured pace during the Stay

Period.  Nonetheless, the Stay Order was not a global stay, and the Trustee has focused his

efforts on those aspects of his investigation not subject to the Stay Order—and has made

significant progress in those areas.  For example:

---

[5]    *See* Docket No. 3038, *Order Staying Adversary Proceedings and Granting Other Relief Pending Disposition of Criminal Proceeding.*

- Since entry of the Extension Order, the Trustee has moved to liquidate certain assets[6] and has moved forward with his efforts to obtain judgments and rulings that bring assets into the estate.[7] Those efforts continue to be successful, and since the Extension Order the Trustee has obtained multiple rulings bringing valuable entities and assets into the estate, rulings that HCHK Technologies, Inc., HCHK Property Management, Inc., Lexington Property and Staffing, Inc. (together with HCHK Technologies, Inc., HCHK Property Management, Inc., the "HCHK Entities"), and Greenwich Land LLC, are the Debtor's alter egos, and that Whitecroft Shore Limited and the Debtor's private Bombardier Jet were beneficially owned by the Debtor.[8]

- Since entry of the Extension Order, the Trustee has focused on the Debtor's assets in foreign jurisdictions. For example, the Trustee has gathered evidence regarding Debtor-controlled assets, including real property, bank accounts, and corporate entities, in multiple foreign jurisdictions. The Trustee successfully obtained an injunction from a BVI court related to K Legacy Ltd., the BVI entity holding title to the Debtor's apartment in London,[9] and has continued his efforts to obtain control of the UK litigation launched against UBS by the Debtor, Ace Decade Holdings Limited, and Dawn State Limited.

- Since entry of the Extension Order, the Trustee has filed three omnibus Rule 2004 discovery motions resulting in the issuance of 35 subpoenas, and commenced three new adversary proceedings.

- Since entry of the Extension Order, the Trustee has collected over 20,000 documents, including through the production of documents in Rule 2004 discovery, accessing documents found in multiple storage facilities, and acquiring documents from law firms that represented the Debtor's alter egos pursuant to the Court's orders requiring the turnover of such entities' assets to the estate.

- Since entry of the Extension Order, Kroll has continued its investigation and forensic analysis of the Debtor's vast shell game, and has identified an additional

---

[6] *See Chapter 11 Trustee's Motion for Entry of Order Pursuant To Sections 105(a), 363(b), 541, and 542 of Bankruptcy Code Approving Liquidation of VCTR Shares, Distribution of Proceeds, and Related Relief* and related order [Docket Nos. 3203 and 3265]; *Chapter 11 Trustee's Motion for Entry of Consent Order Regarding Transfer of Ownership of Ducati Motorcycle to Estate* and related order [Docket Nos. 3177 and 3220].

[7] *See, e.g., Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment Against HCHK Technologies, Inc., HCHK Property Management, Inc., Lexington Property and Staffing, Inc., Holy City Hong Kong Ventures, Ltd., Anthony DiBattista, Yvette Wang, and Brian Hofmeister, in His Capacity as Assignee* [Adv. Proc. No. 23-05013, Docket No. 268]; *Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment Against Defendants K Legacy Ltd. and Qiang Guo* [Adv. Proc. No. 24-05249, Docket No. 33]; *Chapter 11 Trustee's Motion for Judgment on the Pleadings on Count I and Count II of Complaint* [Adv. Proc. No. 24-05001, Docket No. 19]; *Chapter 11 Trustee's Opposition to Defendant Weddle Law PLLC's Motion to Dismiss Complaint* [Adv. Proc. No. 24-05188, Docket No. 17].

[8] *See Summary Judgment* [Adv. Proc. Docket No. 23-05005, Docket No. 134]; *Amended Default Judgment and Permanent Injunction* [Adv. Proc. No. 23-05013, Docket No. 297].

[9] *See Notice of Chapter 11 Trustee Providing Update with Respect to British Virgin Islands Proceedings, as Related to K Legacy Ltd. and London Apartment* [Docket No. 3161].

7

207 Kwok-related bank accounts and approximately 88,580 transactions in and out of these accounts, resulting in cumulative totals for those numbers when including the pre-Extension Order period of 546 and 172,400, respectively. Kroll has also tracked approximately $12.2 billion coming in to, and $9.1 billion going out of, those accounts.

- The Trustee has also obtained valuable information from monitoring the Debtor's criminal trial, which commenced on May 22, 2024 and resulted in the Debtor being found guilty on multiple counts per the jury's verdict reached on July 16, 2024. Examples of valuable information made public at the criminal trial include, among other things, testimony Scott Barnett, the Debtor's bodyguard and driver, regarding his role with respect to the Taurus Fund LLC, the company holding title to the Debtor's mansion in Mahwah New Jersey,[10] and the testimony of Haitham Khaled, who worked for the Debtor in connection with the Debtor's banking operations, in connection with the Debtor's control over G Club Operations LLC and its funds.[11] In addition to testimony, the criminal trial has generated a wealth of documentation in the form of trial exhibits, and the Trustee hopes to obtain more documents and information from the prosecution now that the main phase of the trial has concluded.

16.    In addition to adversary proceeding litigation, the Trustee also initiated efforts to resolve avoidance actions through mediation, successfully seeking the implementation of mediation procedures[12] and commencing mediation discussions with approximately fifty avoidance action defendants, with the assistance of Judge Tancredi as mediator, pursuant to the Mediation Procedures Order.

### c.    Debtor's Continued Obstruction Efforts

17.    Since entry of the Extension Order, the Debtor and his associates have continued to oppose and obstruct the Trustee's efforts. For example, in an effort to obstruct the Trustee's ability to take control of and resolve the Debtor's litigation against UBS, the Debtor's associate holding the stock of Ace Decade Holdings Limited ("Ace Decade") recently appointed purported

---

[10]    *See generally* July 8, 2024 Hr. Tr., at 5452-5542, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y. July 8, 2024).

[11]    *See generally* June 11, 2024 Hr. Tr., at 2032-2064, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y. June 11, 2024).

[12]    *See Order Directing Parties to Mediation, Appointing the Honorable James J. Tancredi as Mediator, and Amending Order Approving Procedures Applicable to Avoidance Claim Adversary Proceedings* [Docket No., 3163] (the "Mediation Procedures Order").

joint provisional liquidators in the BVI (the "Purported Liquidators"), who have attempted to delay the entry of a default judgment order with respect to Ace Decade.[13]  Debtor-aligned parties have also attempted to delay the Trustee by, among other things, evading service,[14] filing untimely challenges to entry of default judgment,[15] and seeking stays pending appeal[16] and the dismissal of adversary proceedings.[17]

### d.  Conclusion of Criminal Trial

18.     The Debtor's criminal trial began on May 22, 2024; on July 16, 2024, the jury returned a verdict finding the Debtor guilty on multiple criminal counts.  Given the issuance of the jury's verdict, the Trustee anticipates that he will be engaged in significantly more investigation and litigation activity in the coming months.

### RELIEF SOUGHT

19.     The Trustee requests entry of the Proposed Order extending the Extension Date six months, through and including February 15, 2025.

---

[13]   *See Emergency Motion of the Joint Liquidators of Ace Decade Holdings Limited For (I) Extension of Time to Respond to Default Judgment Motion and (II) Postponement of July 9, 2024 Hearing on Motion* [Adv. Proc. No. 23-05028, Docket No. 47].

[14]   Discussed at ¶ 29 of the *Chapter 11 Trustee's Amended Opposition to Emergency Motion of the Joint Liquidators Of Ace Decade Holdings Limited For  (I) Extension of Time To Respond To Default Judgment Motion and (II) Postponement of July 9, 2024 Hearing On Motion* [Adv. Proc. No. 23-05028, Docket No. 53, Exhibit A].

[15]   *See HCHK Defendants' Motion Opposition to Trustee's Motion for Default Judgment* [Adv. Proc. No. 23-05013, Docket No. 276];

[16]   *See Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007* [Adv. Proc. No. 23-05005, Docket No. 139]; *Motion to Stay Pending Appeal and Request to Expedite Consideration of the Motion*, HCHK Technologies, Inc. et al. v. Despins, 3:24-cv-01104-KAD (D. Conn. July 8, 2024), Docket No. 9; *Emergency Motion of Appellants Shih Hsin Yu, 1332156 B.C. Ltd. and GWGOPNZ Limited's for Stay Pending Appeal and Request to Expedite Consideration of the Motion*, Yu et al. v. Despins, 3:23-cv-01067-KAD (D. Conn. July 8, 2024), Docket No. 40.

[17]   *See Motion to Dismiss on Behalf of Defendant Leading Shine NY Ltd.* [Adv. Proc. No. 23-05023, Docket No. 76]; *Memorandum of Decision and Order Denying Motions to Dismiss* [Adv. Proc. No. 23-05023, Docket No. 87].

## **BASIS FOR RELIEF**

20.     In the Extension Order, the Court held that, as a matter of law, Bankruptcy Rule 9006(b) authorizes a bankruptcy court to extend the statutes of limitations found in sections 108(a), 546(a), and 549(d) of the Bankruptcy Code.  The question, therefore, "is whether there is 'cause,' on the facts and circumstances before the Court," to do so.[18]  The Court found cause in connection with the original Extension Motion, and the Trustee submits there is cause to grant the instant Motion.

## **I.     Cause Exists Under Rule 9006(b) to Grant Trustee's Requested Extension**

21.     In the Extension Order, the Court found cause from the combination of (i) the Debtor's lack of cooperation and, indeed, active obstruction and (ii) the Trustee's diligence.  The Trustee submits that both of those factors remain applicable.

### **a.     Trustee Has Acted Diligently**

22.     Taking the latter first, in the Extension Order, the Court "conclude[d] that the Trustee has shown more than reasonable diligence in his efforts."[19]  The Trustee's efforts have not slackened since then.

23.     A bankruptcy trustee acts diligently if any delay is not self-inflicted.  *Schmidt v. Twosons Corp. (In re Black Elk Energy Offshore Operations, LLC)*, No. 15-34287, 2022 WL 1589190, at *11 (Bankr. S.D. Tex. May 19, 2022) (noting extraordinary circumstance that supports equitable tolling "derives from some external obstacle to timely filing beyond the plaintiff's control, not from self-inflicted delay") (as modified) (internal quotation marks and references omitted);[20] *see also In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 790-91

---

[18]     Extension Order at 12.
[19]     Extension Order at 17.
[20]     *Black Elk Energy* dealt with equitable tolling, not cause under Rule 9006(b).  However, the Court has already noted that there is overlap between the factual predicates that justify the application of the two doctrines.  *See*

(Bankr. M.D. Fla. 2013) ("It is enough to say that the targets cannot credibly claim the Trustee's inability to complete her investigation is a result of any lack of diligence on her part."). Here, the Trustee's investigation and asset recovery assets have been delayed by events outside of his control and apart from the Debtor's obstruction (which, to be clear, also exists).

24.     Those outside factors are (i) the sheer volume of information the Trustee must to obtain and analyze, combined with the total lack of any books and records from the Debtor, and (ii) the Debtor's recently completed criminal trial.[21]

> i. Volume of Information

25.     Even with the extra time since the Extension Order, the Trustee has not completed his factual investigation and analysis. To the contrary, the Trustee continues to discover new information almost daily, which information must be analyzed by the Trustee's forensic accountants and attorneys before any litigation can be commenced to actually recover an asset. As discussed above, this includes new information about the Debtor's international activities, information from the additional omnibus Rule 2004 motions, and new information identified by Kroll.

26.     Additionally, the Trustee has also obtained valuable information that was not previously public from monitoring the Debtor's criminal trial, which ended only days ago and which included 29 days of testimony and argument. For example, Scott Barnett, the Debtor's

---

Extension Order at 13 (citing decisions regarding equitable tolling in context of determining whether cause exists under Rule 9006(b) to extend statutes of limitation).

[21]     These two factors were the basis of the trustee's motion in *In re Providence Fin. Invs., Inc.*, Case No.: 16-20516-AJC. In that case, the trustee was investigation a "multi-jurisdictional Ponzi scheme," and due to the nature and scope of the fraud the trustee was unable to complete her forensic accounting analysis or "piece together all of the claims that the estate would have" in two years. Another "major impediment" was that "key witnesses and perpetrators" were "embroiled in several regulatory and criminal matters" with the SEC, DOJ, and foreign counterparts. The court granted the motion, as well as several further extensions. *See In re Providence Fin. Invs., Inc.*, No. 16-20516 (AJC) (Bankr. S.D. Fla. May 31, 2018) [ECF No. 198], *Transcript of Hearing May 10, 2018* (Bankr. S.D. Fla. May 31, 2018), and ECF Nos. 284 and 292 (motion and order). Relevant portions of the transcript, the motion, and the court's order, are attached as **Exhibit 2** hereto.

bodyguard and driver, testified regarding his role with respect to the Taurus Fund LLC, the company holding title to the Debtor's mansion in Mahwah New Jersey.[22]  Similarly, Haitham Khaled, who worked for the Debtor in connection with the Debtor's banking operations, testified in connection with the Debtor's control over G Club Operations LLC and its funds.[23]  In addition to testimony, the criminal trial has generated a wealth of documents in the form of trial exhibits, (the Government alone submitted approximately 300 exhibits) and the Trustee hopes to obtain more documents and information from the prosecution now that the main phase of the trial has concluded.

27.    As was the case with the original Extension Motion, what the Trustee learns is very rarely, if ever, a standalone piece of information.  Instead, everything the Trustee learns is, instead, just one piece in the puzzle, which each piece leading to another, to more stones for the Trustee to turn over, and revealing more assets hidden and/or transferred.  *See In re ThermoView Indus., Inc.*, 381 B.R. at 227 (granting extension motion under Rule 9006(b) in "an exceedingly complex case in which the Trustee has pursued and filed nearly 400 adversary proceedings"); *see also In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 790 (Bankr. M.D. Fla. 2013) ("The Court notes—as it has done many times in the past—that this case is unique.  That is true not only of the facts of this case, but the legal issues as well.  And the stakes are unquestionably high. There is over $1 billion in claims in this case, and the Trustee may be seeking to recover that much from the targets.").

---

[22]    *See generally* July 8, 2024 Hr. Tr., at 5452-5542, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y. July 8, 2024).

[23]    *See generally* June 11, 2024 Hr. Tr., at 2032-2064, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y. June 11, 2024).

ii.  Debtor's Criminal Trial

28.     The criminal trial has not only delayed the Trustee's investigation in the sense

that it has revealed information that requires additional investigation, adding to the volume of

information the Trustee must analyze.  It has also delayed the Trustee's investigation in a very

concrete fashion, as the pendency of the criminal trial, and the unopposed Stay Order, required

the Trustee to curtail certain aspects of his investigation and recovery efforts.  *See generally*

*Collins v. Decker (In re Decker)*, No. 06-60886, 2011 WL 2174349, at *5 n. 5 (Bankr. N.D.N.Y.

June 1, 2011) (citation omitted) ("pendency of other legal proceedings which prevent

enforcement of the subject claim" justify extending limitations period); *In re Dwek,* No. 07-

11757 (Bankr. D.N.J. Feb. 2, 2009) ("[E]quitable tolling of the Statute of Limitations is

appropriate here given the recent activities by the U.S. Attorney and the FBI in conducting their

investigations.  That has involved a lengthy delay of continued 2004 deposition of the Debtor,

and that's beyond the control of the Trustee.").[24]

**b.  Debtor's Obstruction and Lack of Cooperation**

29.     Courts find cause to extend limitations periods when a trustee is unable to make

progress on discovery, especially in light of the debtor's obstruction.  *See, e.g.*, *In re Int'l Admin.*

*Servs. Inc.*, 408 F.3d 689, 702 (11th Cir. 2005) (tolling statute of limitations based, in part, on

debtor and defendant's attempts to interfere with trustee's investigation into asset diversion plan

by hiding their activities and violating discovery requests).[25]

---

[24]  Hr'g Tr. at 9:10-17, *In re Dwek*, No. 07-11757 (KCF) (Bankr. D.N.J. Feb. 2, 2009) [ECF No. 3916], attached
hereto as **Exhibit 3**.

[25]  *See also Bender v. Mann (In re Bender)*, No. 02-00773-RTB, 2010 WL 6467681, at *9-10 (B.A.P. 9th Cir. Nov.
15, 2010), *aff'd*, 480 F. App'x 445 (9th Cir. 2012) (affirming lower court decision for equitable tolling where
the debtor's obstruction "stood in the way" of the trustee's filing of an avoidance action and noting the "case
law is replete with examples where courts have allowed equitable tolling in response to obstructive behavior by
a party"); *Freeland v. CPA Warehouse (In re Livemercial Aviation Holding, LLC)*, 508 B.R. 58, 71 (Bankr. N.D.
Ind. 2014) ("The Trustee's inability, despite due diligence, to obtain information/documentation highly material
to the core of this case—for whatever reason caused Mathis' inability or failure to promptly produce or provide

13

30.     On the most basic level, the Debtor has an obligation to fulfill certain duties imposed on him by the Bankruptcy Code, including to cooperate with the Trustee.  In the Extension Order, the Court noted that the Debtor's failure to do so has forced the Trustee "to seek extensive and ongoing third party discovery," in an effort to obtain information, and understand the true extent of the Debtor's assets, that should have been provided directly by the Debtor (and/or his family members, associates, employees, followers, and associated entities).[26]

31.     Nothing has changed.  Neither the Debtor nor his family members, associates, and affiliated entities have had a change of heart and are now cooperating with the Trustee.  As has been the case since his appointment, the Trustee has had to utilize discovery practice to obtain the information he needs to conduct his investigation.  Even without active obstruction, therefore, the Debtor's lack of cooperation has delayed the Trustee's investigation, and constitutes cause under Rule 9006(b) to grant the instant Motion.[27]

32.     To be clear, however, the Debtor and his associates *have* continued to actively obstruct and delay the Trustee's efforts.  As noted above, the Trustee has been forced to address the continuing efforts to obstruct the Trustee's ability to take control of and resolve the Debtor's litigation against UBS and Debtor-aligned parties evading service, filing untimely challenges to entry of default judgment, and seeking stays pending appeal.  The Trustee also recently filed a motion to preserve evidence based on the Trustee's discovery that non-parties are in possession

---

it—amply supports the application of the doctrine of equitable tolling to this case in order to extend the limitation period of 11 U.S.C. § 546(a)(1)(A)").

[26]    Extension Order at 14-16.  The Court also noted that the Debtor's failure "to comply with his duties" may even support a finding that the statutes of limitations "have not even begun to run" in the first place.  *Id*. at 14.

[27]    Other courts have similarly focused on a debtor's recalcitrance forcing a trustee to obtain third-party discovery.  See *Ochs Charitable Remainder Trust v. Ochs (In re Ochs)*, 608 B.R. 252, 261–62 (Bankr. D. Colo. 2019) (pointing to, among others, the "[Defendant's] obstruction of legitimate discovery, requiring the Court to intervene twice in the bankruptcy discovery disputes and rule against the Defendant both times; . . . his failure to provide a complete document production, requiring the Plaintiffs to direct discovery to several third-party financial institutions to obtain documents in 2019; and . . . when finally deposed after multiple delays, his vague and indefinite answers to questions under oath.").

of evidence, as well as a motion to seal to address the real concern that the Debtor or his associates would interfere with the preservation of that evidence.[28]

33.     Finally, the recently completed criminal trial has further demonstrated the extent of the Debtor's obstruction and dishonesty, to both this Court and the Trustee.  As noted above, the evidence at the trial revealed numerous facts previously unknown to the Trustee.  Much of this information was information that the Bankruptcy Code obligated the Debtor to provide to the Trustee; as the Court has observed, the Debtor has routinely flaunted this obligation.

34.     But it is not simply that the Debtor did not provide the information.  Instead, he (and his associates) repeatedly took positions in this case contrary to the positions taken, and information disclosed, in the criminal trial.  For example, contrary to his protestations of poverty before this Court, the Debtor's criminal attorneys argued that he is a Chinese businessman that built a massive business enterprise.  And, even though he and his associates have fought the Trustee at every turn in the Mahwah adversary proceeding, his counsel effectively admitted during questioning in the criminal trial that the Debtor had purchased the Mahwah Mansion.[29]

## II.     Trustee Reserves Rights Under Equitable Tolling and Other Equitable Doctrines

35.     In the Extension Order, the Court held that equitable tolling does not apply prospectively.  The Court, though, made clear that the Trustee may raise "equitable tolling or other equitable arguments in response to a defense that an adversary proceeding commenced by the Trustee is time-barred."[30]  The Trustee reserves all rights accordingly.

---

[28]   *See* Docket No. 3306.

[29]   *See* July 8, 2024 Hr. Tr., at 5441:4-5, *United States v. Kwok*, No. 1:23-cr-00118-AT (S.D.N.Y. July 8, 2024) ("[Debtor's Counsel] Q. Were you surprised when **[the Debtor] purchased that property**? [Mr. Scott Barnett] A. Yes.") (emphasis added).  Relevant portions of the transcript are attached as **Exhibit 4** hereto.

[30]   Extension Order at 20.

## <u>CONCLUSION</u>

36.     In *In re Fundamental Long Term Care*, the court explained that the "only reason not to enlarge" the limitations periods is if "the Trustee is already in a position to bring all [his] avoidance actions."  501 B.R. at 791.  And the Southern District of New York has explained that to "act diligently is to demonstrate to the Court that one has not slept on his rights."  *In re Ramsoomair*, No. 21-11215 (DSJ), 2022 WL 828307, at *6 (Bankr. S.D.N.Y. Mar. 18, 2022) (internal quotation marks and references omitted).  For all the reasons detailed above, there can be no dispute that the Trustee has acted diligently and has not slept on his rights—and, even so, is not yet in position to bring all his avoidance actions.  As such, the Motion should be granted.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court

enter the Proposed Order granting the relief requested herein and grant any other relief as the

Court considers proper.

Dated:    July 19, 2024          LUC A. DESPINS,
          New Haven, Connecticut     CHAPTER 11 TRUSTEE

                                     By: */s/ Patrick R. Linsey*
                                       Patrick R. Linsey (ct29437)
                                       NEUBERT, PEPE & MONTEITH, P.C.
                                       195 Church Street, 13th Floor
                                       New Haven, Connecticut 06510
                                       (203) 781-2847
                                       plinsey@npmlaw.com

                                        *and*

                                     Douglass Barron (admitted *pro hac vice*)
                                     PAUL HASTINGS LLP
                                     200 Park Avenue
                                     New York, New York 10166
                                     (212) 318-6000
                                     douglassbarron@paulhastings.com

                                        *and*

                                     Nicholas A. Bassett (admitted *pro hac vice*)
                                     PAUL HASTINGS LLP
                                     2050 M Street NW
                                     Washington, D.C., 20036
                                     (202) 551-1902
                                     nicholasbassett@paulhastings.com

                                     *Counsel for the Chapter 11 Trustee*

17

**Exhibit 1**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :   Chapter 11
                                                       :
HO WAN KWOK, *et al.*,[1]                              :   Case No. 22-50073 (JAM)
                                                       :
              Debtors.                                 :   (Jointly Administered)
                                                       :
-------------------------------------------------------x

**[PROPOSED] ORDER GRANTING FIRST SUPPLEMENTAL MOTION OF CHAPTER 11 TRUSTEE TO EXTEND AUGUST 15, 2024 DEADLINE FOR TRUSTEE TO FILE AVOIDANCE ACTIONS**

UPON CONSIDERATION OF the *First Supplemental Motion of Chapter 11 Trustee to Extend August 15, 2024 Deadline for Trustee to File Avoidance Actions* (the "Motion"), and good cause having been shown, and the Court having considered any and all objections and other responses to the Motion, and the Court finding that (i) there is good cause for the relief requested, (ii) the Trustee has acted diligently, and (iii) the Motion has been served in accordance with the Court's prior Order granting the Notice Motion, and such notice is proper and sufficient under the circumstances and no other notice is required, and the relief provided herein being narrowly tailored to serve the foregoing purposes, it is by the Court, hereby

ORDERED, that the Motion is granted as set forth herein; and it is further

ORDERED, that the time limitations set forth in 11 U.S.C. 108, 546, and 549 for the Trustee to commence avoidance actions and other actions on behalf of the estate, as well as for

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

amending any pending complaints, are extended through and including February 15, 2025, which date may be further extended; and it is further

ORDERED, that any party that has received notice, whether actual or constructive, of the Motion and did not object to the Motion has waived its right to assert a limitations period defense if ultimately named in an action that is timely brought under the terms of this Order; and it is further

ORDERED, that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that the Trustee is authorized to take all actions necessary to effectuate the relief granted herein; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2024

_____
Julie A. Manning,
United States Bankruptcy Judge

**Exhibit 2**

1          UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF FLORIDA
2    In Re:
3    PROVIDENCE FINANCIAL         Case No. 16-20516-AJC
     INVESTMENTS, INC.,           Chapter 7
4    PROVIDENCE FIXED INCOME      (Jointly Administered)
     FUND, LLC,                   Case No. 16-20517-AJC
5
         Debtors.
6    _____/
     MARIA YIP, as Trustee of
7    Providence Financial Investments,
     Inc., and Providence Fixed Income
8    Fund, LLC,
9        Plaintiff,
10   v.                           Adv. No. 17-01156-AJC
11   WILTON PEREZ and FINANCIAL
     ASSURANCE GROUP, INCORPORATED,
12   a Puerto Rico corporation,
13       Defendants.
     _____/
14
15          ECF # 151, 153, 155, 156
16             May 10, 2018
17        The above-entitled cause came on for
18   hearing before the HONORABLE A. JAY CRISTOL, one of
19   the Judges of the UNITED STATES BANKRUPTCY COURT, in
20   and for the SOUTHERN DISTRICT OF FLORIDA, at 301 N.
21   Miami Avenue, Miami, Miami-Dade County, Florida, on
22   Thursday, May 10, 2018, commencing at or about 11:00
23   a.m., and the following proceedings were had:
24        Transcribed from a digital recording by:
              Helayne Wills, Court Reporter
25

```
 1   APPEARANCES:
 2

         AKERMAN LLP, by
 3       EYAL BERGER, ESQ.
         LUIS R. CASAS, ESQ.,
 4       on behalf of Maria Yip, Chapter 7 Trustee
 5

         BERGER SINGERMAN, P.A., by
 6       JAMES GASSENHEIMER, ESQ.,
         Special litigation counsel on behalf of the
 7       Chapter 7 Trustee
 8

         RAPPAPORT OSBORNE & RAPPAPORT, by
 9       JORDAN RAPPAPORT, ESQ.,
         on behalf of Amanda Francis, John Abio and Abio
10       Financial
11

         GENOVESE JOBLOVE & BATTISTA, P.A., by
12       PAUL BATTISTA, ESQ.,
         and
13       WILLIAMS & CONNOLLY, LLP, by
         ELLEN E. OBERWETTER, ESQ.,
14       on behalf of Philip Bowers, Andrew Isham and
         Alexander Adam
15

16       ALSO PRESENT:
         ECRO - Electronic Court Reporting Operator
17       MARIA YIP, Chapter 7 Trustee
         MARCIE BOUR
18       WILTON PEREZ (via telephone)
19
20
21
22
23
24
25
```

```
 1              THE COURT:  Providence Financial
 2    Investments, Inc.  It's reported that Jordan
 3    Rappaport is out in telephone land.
 4              MR. RAPPAPORT:  Yes, Your Honor.  Jordan
 5    Rappaport, R-A-P-P-A-P-O-R-T, here representing John
 6    Abio and Amanda Francis, and Abio Financial Group,
 7    Inc.
 8              THE COURT:  And what is their position?
 9    How are they related to the case?
10              MR. RAPPAPORT:  Your Honor, there's an
11    omnibus motion to compromise controversy with my
12    clients.  I'm here just observing.
13              THE COURT:  Oh, I see.  Okay.
14              And in the courtroom?
15              MR. BERGER:  Good morning, Your Honor.
16    Eyal Berger, B-E-R-G-E-R, of the Akerman law firm,
17    representing the Chapter 7 Trustee, Maria Yip, for
18    the bankruptcy estates of Providence Financial
19    Investments, Inc. and Providence Fixed Income Fund,
20    LLC.  With me at counsel table is my associate, Luis
21    Casas Meyer.
22              I'll let my client and co-counsel make
23    their own appearances.
24              MR. GASSENHEIMER:  Good morning, Your
25    Honor.  James Gassenheimer, G-A-S-S-E-N-H-E-I-M-E-R,
```

Page 4

1  from Berger Singerman, as special litigation counsel

2  to the debtors.

3        THE COURT:  And so -- to the debtors?

4        MR. GASSENHEIMER:  Sorry, to the trustee.

5        THE COURT:  To the trustee.  I think

6  that's a little different representation.

7        Who else wishes to make an appearance?

8        MS. YIP:  Good morning, Your Honor.  Maria

9  Yip, Chapter 7 Trustee, and also in the courtroom is

10  Marcie Bour, B-O-U-R, with Yip Associates.

11        THE COURT:  Very well.  Other appearances?

12        MR. BATTISTA:  Good morning, Your Honor.

13  I'm Paul Battista.  My surname is spelled B as in

14  boy, A-T-T-I-S-T-A.  I'm joined by my co-counsel,

15  Ellen Oberwetter from the Williams & Connolly firm.

16  Her surname is spelled O-B-E-R-W-E-T-T-E-R.

17  Yesterday Your Honor was kind enough to enter an

18  order admitting her pro hac vice to our court for

19  this matter.  Thank you for that.

20        Judge, together we represent three

21  gentlemen by the name of Philip Bowers, B-O-W-E-R-S,

22  Andrew Isham, I-S-H-A-M, and Alexander Adam,

23  A-D-A-M.  Those gentlemen have been appointed in an

24  insolvency proceeding in the -- by the World Court

25  in Guernsey, the Bailiwick of Guernsey, over three

 1  companies -- two companies, Providence Investment

 2  Fund, PCC, Ltd., and Providence Investment

 3  Management International, Ltd.  Thank you.

 4          THE COURT:  Very well.  Shall we start

 5  with Court Paper 151?  That's a motion to extend the

 6  time to file actions under Sections 105, 546 and

 7  549.  That's Trustee's motion.

 8          MR. BERGER:  Yes, Your Honor, but if you

 9  would -- it's been several months since I've been

10  before the Court, and I was hoping I could give the

11  Court a brief status of the case prior to going into

12  the motion.

13          THE COURT:  Why don't you do that?

14          Have you been to Guernsey?

15          MR. BERGER:  I have not been to Guernsey

16  yet, Your Honor.

17          THE COURT:  They have beautiful cows

18  there.

19          MR. BERGER:  That's what I hear.

20          THE COURT:  Guernsey and Jersey and Sark,

21  lovely set of islands.

22          MR. BERGER:  I've only made it as far as

23  London, so I have not made it to Guernsey yet, Your

24  Honor.

25          As the Court might be familiar from the

```
 1    record in this case, this is a multi-jurisdictional
 2    Ponzi scheme, perpetrated by at least three
 3    individuals, Antonio Buzaneli, Jose Ordonez and
 4    Julio Rivera.  The scheme started here in Miami in
 5    Key Biscayne, basically with the formation of the
 6    parent entity of these two debtors.  Then these two
 7    debtors moved over to the United Kingdom in
 8    Guernsey, and then thereafter it moved to various
 9    locations in Asia.
10            One of the difficulties, Your Honor, that
11    the trustee has had in administrating a
12    multi-jurisdictional Ponzi scheme is that a big
13    volume of key documents necessary to complete the
14    forensic accounting is located in a variety of
15    foreign jurisdictions that we have not had access
16    to.
17            The other major impediment that we've had,
18    Your Honor, is that the key witnesses and the key
19    perpetrators of this Ponzi scheme have been
20    embroiled in several regulatory and criminal matters
21    with the Securities and Exchange Commission, the
22    counterpart in Guernsey, as well as the Department
23    of Justice.  In fact, it's only recently, Your
24    Honor, that all three of the principals I just
25    mentioned finalized all of their plea agreements,
```

1   and basically admit to the crimes that the DOJ

2   indicted them for.

3           Without access to key documents and

4   without access to the key witnesses, it's been

5   difficult for us to piece together all of the claims

6   that the estate would have against various parties.

7   What Your Honor has seen in the various adversaries

8   filed before the Court, those are avoidance claims

9   and some other claims where we have the complete

10  records of transfers vis-a-vis the specific

11  transferee.  We have not been able to complete that

12  forensic for a multitude of targets, because of the

13  key documents and key witnesses being located in

14  other jurisdictions.

15          When the Trustee was appointed back in

16  July of 2016, one of the first things that the

17  Trustee did is, we reached out to the administrators

18  upon their appointment, Your Honor, in an effort to

19  do two things.  One, create a discovery

20  collaboration between our two estates, and we did

21  that via executing a joint discovery agreement,

22  where we could exchange discovery and maintain its

23  confidentiality.

24          And the second item was to collaborate

25  with the administrators for claims that the estates

Page 8

```
 1   would potentially share against similar

 2   (unintelligible).

 3           We have spent, Your Honor, over 18 months,

 4   through phone conferences, e-mails, basically trying

 5   to get an agreement with the administrators, with

 6   the other estates, to basically collaborate on these

 7   shared claims, but as of the date of this hearing we

 8   have not been able to get access to the

 9   administrators' documents, their tracing analysis,

10   their forensics, and we have not been able to reach

11   an agreement on a collaboration between the two

12   estates.

13           The motion -- several of the motions that

14   are teed up before Your Honor today are basically

15   seeking to preserve all of the estates' claims

16   against various third parties, and allow our

17   bankruptcy estates to basically move forward in the

18   most cost effective and efficient fashion against

19   targets located throughout the globe.

20           With the Court's permission, I think that

21   it makes sense to take these motions out of order,

22   Your Honor.

23           THE COURT:  All right.  Which one do you

24   want to go with?

25           MR. BERGER:  I believe that ECF 155, which
```

Page 9

```
 1   is a 9019 motion --
 2              THE COURT:  That's a compromise of
 3   controversy with John Abio and Abio Financial Group;
 4   is that correct?
 5              MR. BERGER:  Correct.  And Amanda Francis,
 6   Your Honor.
 7              THE COURT:  Oh, and Amanda Francis, who's
 8   represented by Jordan Rappaport.  So you have a
 9   compromise there.
10              Mr. Rappaport, are you on board with
11   agreeing to approving the compromise?
12              MR. RAPPAPORT:  Yes, Your Honor.  That's
13   why I'm on the phone, to support the agreement.
14              THE COURT:  Very well.  Does anyone else
15   have an interest in that matter?
16              Then there being no objection, we'll grant
17   the motion.  Who's going to draw that order?
18              MR. BERGER:  Your Honor, we can draw that
19   order.
20              THE COURT:  Okay.
21              MR. RAPPAPORT:  With that approval, Your
22   Honor, with your permission I'm going to --
23              THE COURT:  You're excused.  Thank you,
24   Mr. Rappaport.
25              MR. RAPPAPORT:  Thank you for your time,
```

1                    CERTIFICATION

2

3    STATE OF FLORIDA:

4    COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand

7    Reporter and Notary Public in and for the State of

8    Florida at Large, do hereby certify that the

9    foregoing proceedings were taken by electronic

10   recording at the date and place as stated in the

11   caption hereto on Page 1; that the foregoing

12   computer-aided transcription is a true record of my

13   stenographic notes taken from said electronic

14   recording.

15              WITNESS my hand this 18th day of May,

16   2018.

17

18

19        _____

                  HELAYNE F. WILLS

20          Court Reporter and Notary Public

           In and For the State of Florida at Large

21         Commission No:  GG123092  Expires 8/2/2021

22

23

24

25

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

IN RE:                                                Case No. 16-20516-AJC
                                                      Chapter 7
PROVIDENCE FINANCIAL INVESTMENTS, INC.,               (Jointly Administered)
PROVIDENCE FIXED INCOME FUND, LLC,                    Case No. 16-20517-AJC
     Debtors.
_____/

## CHAPTER 7 TRUSTEE'S SECOND MOTION
## TO EXTEND THE 11 U.S.C. §§108, 546, AND 549 DEADLINES

Maria Yip, the Chapter 7 Trustee for the bankruptcy estate of Providence Financial

Investments, Inc. and Providence Fixed Income Fund, LLC, by and through its undersigned

counsel and pursuant to Section 105 of the Bankruptcy Code (*i.e.*, 11 U.S.C. §§101 *et seq.*) and

Rule 9006(b), Federal Rules of Bankruptcy Procedure, files this Motion to extend the deadline to

file avoidance actions under Section 546 of the Bankruptcy Code, and to extend the deadline to

file all other actions on behalf of the estates  pursuant to Section 108 and 549 of the Bankruptcy

Code.

The Trustee seeks to extend the Section 108, 546, 549 deadlines (the "Deadlines"), which

currently all expire on January 28, 2019 by prior Court Order.  The Trustee and her

professionals, after determining that the  Debtors' were utilized as part of a global Ponzi scheme

that defrauded investors in the United States of over $70 million, have engaged in extensive

litigation against the principals of Providence, individuals who sold worthless unregistered

securities, net-winners of this scheme, and other entities and individuals that participated in the

scheme.

The Trustee is seeking  additional time to properly administer these estates because, *inter*

*alia*: (1) of the global nature of the myriad of transfers at issue in this case, (2) the lack of

1

provided by section 108(b) as a permissible exercise of authority under section 105(a)); *See also In re 652 West 160th LLC*, 330 B.R. 455, 465 (Bankr. S.D.N.Y. 2005).

13.     There is sufficient cause for the Court to enlarge the Section 108, 546, 549 statute of limitations period in these cases.  The appropriate standard in this instance is the "for cause" analysis under Rule 9006, Federal Rules of Bankruptcy Procedure.   As the Court in *In re Fundamental Long Term Care,* stated:

> It seems to the Court that the appropriate standard would be the "for cause" analysis under Rule 9006. The Trustee here seeks an enlargement of time before the period has expired (equitable tolling presumably comes into play after the limitations period has expired). And that was the analysis the Eleventh Circuit initially applied in *In re International Administrative Services,* before turning to the equitable tolling analysis in an abundance of caution. So there does not appear to be any reason not to apply the "for cause" analysis.

501 B.R. at 789.

14.     In these cases, the global and tangled web of transactions between the Debtors and over 96 other providence companies have made the tracing of funds a difficult and resource intensive task, especially when the Trustee, until recently, only had access to the Debtors' books and records and not the books and records of these other, mostly foreign entities. The difficulty of this task has been further exacerbated by the lack of any funds, until recently, in the estate.

15.     Since the Trustee filed her First Extension Request, the Trustee has engaged in extensive litigation against perpetrators and beneficiaries of the Providence Ponzi-Scheme. Currently there are pending adversary proceedings and actions, which could result in the Trustee acquiring information about other potential estate assets, additional subsequent transferees not previously known, and other potential litigation. Further, as a result of this litigation, limited funds have very recently come into the estate which could be utilized to take investigative actions that the estate was previously precluded from taking due to financial constraints.

5

16.     The criminal proceedings against Antonio Buzaneli ("Buzaneli"), Jose Ordonez ("Ordonez"), and Julio Rivera ("Rivera"), the primary perpetrators of the Providence scheme, have, for the most part, been concluded. As of the date of this Motion, Buzaneli and Rivera have not been sentenced in their criminal proceedings, although it appears sentencing for both is looming. Ordonez, on January 23, 2019, was sentenced to 120 months in prison with 3 years of supervised release afterward.

17.     Additionally the Trustee has obtained a Default Final Judgment against Buzaneli of $49,965,081.23 [Adv. No. 18-1309 ECF Nos. 15 and 16], settled with Rivera for the entry of a Consent Final Judgment of $49,965,081.23 [Adv. No. 18-1313, ECF Nos. 20 and 21], and settled with Ordonez, which approval is still pending, for the entry of another Consent Final Judgment of $49,965,081.23 [ECF No. 272]. The Trustee believes that once both civil and criminal proceedings against Buzaneli, Ordonez, and Rivera are resolved, all three will be more willing to cooperate with the Trustee's ongoing investigations.

18.     Finally, the administrative proceedings taking place in the United Kingdom/Guernsey in regards to Providence Investment Management International Limited and Providence Investment Funds PCC Limited, two foreign entities related to the Debtors, are still ongoing. Continued investigations and legal proceedings by the Joint Administration Managers in those proceedings could yield additional discovery as to the ultimate transferees of the Debtors' transfers that the Trustee does not currently possess.

19.     The amount of time that Trustee seeks to extend the Deadlines (*i.e.*, six (6) months) is entirely reasonable and reflects a conservative extension of time by which the Trustee will be able complete her investigation given the relatively recent developments discussed in this Motion. The Trustee believes this will be the last extension requested. Accordingly, the Court

6

should grant this Motion and extend the Deadlines an additional six (6) months beyond the current January 28, 2019, deadline.

WHEREFORE, the Trustee respectfully requests that this Court enter an order substantially in the form of the Order attached hereto as **Exhibit A** (i) Granting this Motion, (ii) extending the time in which to file the actions enumerated in 11 U.S.C. §§108, 546, and 549 an additional six (6) months up to and including July 28, 2019, and (iii) granting such further relief as this Court deems just and proper.

Dated: January 25, 2019               Respectfully submitted,

                         /s/ Eyal Berger
                       Eyal Berger, Esq.
                       Florida Bar Number:  0011069
                       Email:  eyal.berger@akerman.com
                       Luis R. Casas, Esq.
                       Florida Bar Number:  0094222
                       Email:  luis.casasmeyer@akerman.com

                       **AKERMAN LLP**
                       Las Olas Centre II, Suite 1600
                       350 East Las Olas Boulevard
                       Fort Lauderdale, FL  33301-2999
                       Phone:  (954) 463-2700
                       Fax:  (954) 463-2224

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished on January 25, 2019 to all parties receiving electronic notice via CM/ECF in this bankruptcy case.

                       */s/Eyal Berger*
                       Eyal Berger, Esq.

47613339;1



**ORDERED in the Southern District of Florida on February 15, 2019.**

_____

**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

IN RE:                                                                  Case No. 16-20516-AJC
                                                                             Chapter 7
PROVIDENCE FINANCIAL INVESTMENTS, INC.,          (Jointly Administered)
PROVIDENCE FIXED INCOME FUND, LLC,                   Case No. 16-20517-AJC
     Debtors.

_____/

**ORDER GRANTING CHAPTER 7 TRUSTEE'S SECOND MOTION
TO EXTEND THE 11 U.S.C. §§108, 546, AND 549 DEADLINES (ECF NO. 284)**

    The Court held a hearing on the Chapter 7 Trustee's Motion to Extend the 11 U.S.C.
§§108, 546, and 549 on February 13, 2019 at 10:30 a.m [ECF No. 284] (the "Motion").  The
Court, having reviewed the Motion, having heard argument of counsel, having noted that no
objections to the Motion were filed or raised at the hearing, and the Court finding that good
cause exist for granting the relief sought, and having been otherwise fully advised in the
premises, hereby

    **ORDERS** as follows:

1. The Motion is **GRANTED**.

2. The time limitations set forth in 11 U.S.C. §§ 546, 108 and 549 for the commencement of avoidance actions and other actions on behalf of the estate, and thus the time for filing any actions subject to the time limitations of 11 U.S.C. §§ 546, 108 and 549, as well as for amending any pending complaints, are extended through and including **July 28, 2019**.

3. The extension set forth in paragraph two (2) shall apply to the entire universe of potential defendants/targets.

# # #

Submitted by:

Eyal Berger, Esq.
AKERMAN LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Email:  eyal.berger@akerman.com
Phone:  (954) 463-2700
Fax:  (954) 463-2224

*(Attorney Berger is directed to serve a conformed copy of this Order and to file a Certificate of Service with the Court).*

**Exhibit 3**

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                        : Case No. 07-11757(KCF)
                              :
      SOLOMON DWEK,           : Trenton, New Jersey
                              : February 2, 2009
                  Debtor.     : 10:18 a.m.

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE KATHRYN C. FERGUSON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:           Broege, Neumann, Fischer &
                          Shaver, LLC
                          BY:  TIMOTHY P. NEUMANN, ESQ.
                          25 Abe Voorhees Drive
                          Manasquan, New Jersey  08736

For the Chapter 11        McCarter & English
Trustee:                  BY:  JEFFREY T. TESTA, ESQ.
                               BRIAN L. BAKER, ESQ.
                          Four Gateway Center
                          100 Mulberry Street
                          Newark, New Jersey  07102

For the Creditors         Duane Morris, LLP
Committee:                BY:  WALTER J. GREENHALGH, ESQ.
                          744 Broad Street
                          Newark, New Jersey  07102-3889


Audio Operator:     Geraldine Holley-Mack

Transcriber:        Kathleen Connolly
                    **COLE TRANSCRIPTION AND RECORDING SERVICE**
                    **Certified Court Transcribers**
                    **P.O. BOX 1216**
                    **OCEAN GATE, NEW JERSEY 08740-1216**
                    **1-877-245-4876**


Proceedings were electronically recorded, transcript produced
by transcription.

APPEARANCES:

For HSBC Bank:                      Wolff & Samson, P.C.
                                    BY:  KAREN L. GILMAN, ESQ.
                                    The Offices at Crystal Lake
                                    One Boland Drive
                                    West Orange, New Jersey  07052

                                    Cahill, Gordon & Reindel, LLP
                                    BY:  ROBERT USADI, ESQ.
                                    80 Pine Street
                                    New York, New York  10005-1702

For Joseph Dwek,                    Cole, Schotz, Meisel, Forman &
Mark Adjmi, Yeshuah,                Leonard, P.A.
LLC, Joseph Dwek Family             BY:  WARREN A. USATINE, ESQ.
Limited Partnership:                25 Main Street
                                    Hackensack, New Jersey  07601

For Sun National                    Wilentz, Goldman & Spitzer, P.A.
Bank:                               BY:  DEIRDRE WOULFE PACHECO, ESQ.
                                    90 Woodbridge Center Drive
                                    Woodbridge, New Jersey  07095

For Jack Hakim and                  Stark & Stark
AJH Investments:                    BY:  JEFFREY S. POSTA, ESQ.
                                    P.O. Box 5315
                                    Princeton, New Jersey  08534

For Bob Nelson                      Shebell & Shebell, LLC
Plumbing & Heating:                 BY:  DANIELLE S. CHANDONNET, ESQ.
                                    1398 Highway 35 South
                                    Ocean, New Jersey  07712-3543

For Isaac Franco:                   King & Spalding, LLP
                                    BY:  ARTHUR J. STEINBERG, ESQ.
                                    1185 Avenue of the Americas
                                    New York, New York  10076-4003

                                    Wachtal & Masyr, LLP
                                    BY:  DAVID YEGER, ESQ.
                                    110 East 58th Street
                                    New York, New York  10022

**Colloquy**                                                                3

 1                THE COURT:  All right.  Come up on <u>Dwek</u>, please.

 2                All right.  May I have your appearances, please,

 3      Counsel?

 4                MR. TESTA:  Good morning, Your Honor.

 5                Jeffrey Testa, McCarter & English, on behalf of the

 6      Chapter 11 Trustee.

 7                MR. BAKER:  Good morning, Your Honor.

 8                Brian Baker, McCarter & English, on behalf of the

 9      Chapter 11 Trustee.

10                MR. GREENHALGH:  Your Honor, Walter Greenhalgh,

11      Duane Morris, counsel for the Creditors Committee.

12                MR. NEUMANN:  Timothy Neumann, Broege, Neumann,

13      Fischer & Shaver, for the Debtors.

14                MS. GILMAN:  Karen Gilman, Wolff & Samson, on behalf

15      of HSBC Bank.

16                MR. USADI:  Robert Usadi, Cahill, Gordon & Reindel,

17      on behalf of HSBC Bank.

18                MR. USATINE:  Warren Usatine, Cole, Schotz, Meisel,

19      Forman & Leonard on behalf of Joseph Dwek, Mark Adjmi,

20      Yeshuah, LLC, and Joseph Dwek Family, Limited Partnership.

21                MS. PACHECO:  Deirdre Pacheco, Wilentz, Goldman &

22      Spitzer, for Sun National Bank.

23                MR. POSTA:  Good morning, Your Honor.

24                Jeffrey Posta, Stark & Stark, for Jack Hakim and AJH

25      Investments on the Motion to toll time only.

**Colloquy** 4

1          MS. CHANDONNET:  Good morning.

2          Danielle Chandonnet from the firm Shebell & Shebell

3     on behalf of Bob Nelson Plumbing & Heating.   We did not file

4     papers in this matter.

5          THE COURT:  Okay.  Thank you.

6          MR. STEINBERG:  Arthur Steinberg from King &

7     Spalding on behalf of Isaac Franco.  And with me is David

8     Yeger from Wachtal & Masyr.

9          MR. YEGER:  Good morning, Your Honor.

10          THE COURT:  All right.  Thank you.

11          There are three matters on the calendar this

12     morning.  Let's go in -- and I also have a court call.

13          The Trustee wanted to participate by court call, as

14     well?

15          MR. TESTA:  Yes, Your Honor.

16          THE COURT:  All right.  We're obviously having a

17     problem with that.  We're working on it.

18          All right.  Let's begin with the Motion for relief

19     from the stay, Bullet No. 3704.

20          MR. BAKER:  Your Honor, with the consent of the

21     Movant, we can adjourn that for 30 days.

22          THE COURT:  Okay.  All right.  We can do March 2nd.

23          Next, I want to do the Order equitably tolling --

24     we're doing <u>Dwek</u> -- equitably tolling the time prescribed by

25     546.

1      What I have is the Trustee's paper, an objection by

2  Isaac Franco, a limited objection by Jack Hakim, and support

3  by the Debtor.

4      You want to take it from there, Mr. Testa?  Is

5  that --

6      MR. BAKER:  I'll do it.

7      THE COURT:  Mr. Baker.  Okay.

8      MR. BAKER:  Your Honor, we don't have much to add to

9  the papers.  With respect to the objections, we think that

10  they should be overruled, but if the Court is not so inclined,

11  as long as the Trustee can preserve his argument later on to

12  assert that the statute, if applicable if additional Causes of

13  Action are brought, to raise the argument that the statute

14  should be equitably tolled.  But I don't know that we have to

15  decide that today.

16      THE COURT:  Okay.  All right.  Thank you.

17      Anyone else in support of the Trustee's Motion?

18      All right.  Opposition?

19      MR. STEINBERG:  Good morning, Your Honor.

20      Isaac Franco filed an objection saying that if the

21  Trustee wants to equitably toll with regard to everybody else

22  in the world, that's fine.  But with regard to Mr. Franco, he

23  sued Mr. Franco over a year ago in this case and that there's

24  a pending adversary proceeding to whatever extent he's allowed

25  to amend based on the complaint that was filed, that is fine.

Response/Steinberg/Posta                                          6

1   But he's had two years.  He decided that he had enough to

2   bring a lawsuit against Mr. Franco a year ago.  And we don't

3   believe it's appropriate to extend with regard to Mr. Franco.

4        When you read the cases that the Trustee cites in

5   connection with equitable tolling, it's generally with regard

6   to whether the Defendant did something that would prevent the

7   Trustee from moving forward in this matter because the

8   Defendant engaged in dilatory tactics or was withholding

9   information.

10       In this case, Isaac Franco has met with the Trustee

11  on a number of occasions, has responded to whatever requests

12  were made, was the subject of a deposition already in this

13  case, and we don't believe that there's any grounds to

14  equitably toll with respect to him.

15       THE COURT:  Okay.  Thank you.

16       Mr. Posta?

17       MR. POSTA:  Your Honor, on behalf of Jack Hakim and

18  AJH Investments, we filed a limited objection, which I'm sure

19  you reviewed.  Trying to be concise.  We filed an adversary

20  proceeding in June of 2007, now over a year-and-a-half ago.

21  That adversary dealt with discharge, as well as claims to a

22  particular piece of property as a result of money that was put

23  up by Mr. Hakim and AJH Investments.  The discharge action

24  involves all of our transactions, which are very limited.

25  Dollar amounts are big, but the transactions were limited with

**Response/Posta**                                      **7**

1    the Debtor.

2              In that adversary, shortly after we filed it, the

3    Trustee filed the Motion to Preserve all Claims and Causes of

4    Action relating to the underlying transactions, which are all

5    of our transactions.  That Motion has been carried since then,

6    which is fine because we consented to it, and it's returnable

7    in April, and there's a trial date at the end of April.  I

8    think the Motion is returnable perhaps the day before.

9              My understanding was our issues with respect to

10   preservation of actions and all of our, all Causes of Action

11   going back and forth, are dealt with by the adversary and by

12   that Motion.  And now we have another Motion that's filed.

13   Our simple position is that those issues are already before

14   the Court, and we shouldn't be subject to this Motion which is

15   yet another Motion dealing with the same subject matter.  It's

16   already covered.

17             The transactions are limited, as we said.  The

18   Debtor has been available and certainly has participated in

19   this case often to provide information to the Trustee.

20   There's nothing specific as far as our client is concerned

21   that I've seen where they can't get information.  If there's

22   more between the parties or they need additional time, you

23   know, there's nothing before the Court to say that they need

24   that.

25             But, essentially, this issue should be covered by

**Decision**                                                                                    **8**

1  what's already before the Court, and we shouldn't be subject

2  to this Motion.

3          Thank you.

4          THE COURT:  Okay.  Thank you.

5          Anybody else?  All right.

6          The Court has received two objections to the

7  Trustee's Motion.  The objections essentially say that the

8  clients, their clients should not be singled out, and the

9  Motion should not apply to them.

10          No legal support is provided for that proposition.

11  The Court is of the opinion that if it finds that cause exists

12  to equitably toll the Statute of Limitation, then it applies

13  across the board.

14          Jack Hakim makes a sort of tangential point that his

15  matter is scheduled for trial on April 29th and, therefore,

16  the Federal Rules should govern the determination as to him,

17  rather than this Motion.

18          I can't agree with that proposition as a matter of

19  law, but I'm not adjourning the scheduled trial based on this

20  Motion.  And the Trustee, it seems to me, would have a

21  difficult time convincing the Court that an amendment of the

22  complaint this close to the trial would be justified when a

23  Trustee brings a Motion seeking an extension until February of

24  2010 to bring avoidance actions.

25          The relief sought by the Trustee has been granted by

**Decision**                                                                    9

1    other Courts under 105 and on an equitable tolling theory.

2            And you can see <u>International Administrative</u>

3    <u>Services</u> at 408 Fed. 3rd 689, or <u>GI Holdings</u> at

4    313 Bankruptcy Reporter 612.  Those Courts reason that 546 is

5    a Statute of Limitation, rather than a Statute of Repose and,

6    therefore, it is subject to equitable tolling.

7            Although this is not the typical situation in which

8    equitable tolling is granted, that is, it's not a situation

9    where the Defendant has fraudulently prevented the Plaintiff

10   from timely bringing his Cause of Action, the Court,

11   nonetheless, finds that equitable tolling of the Statute of

12   Limitations is appropriate here given the recent activities by

13   the U.S. Attorney and the FBI in conducting their

14   investigations.  That has involved a lengthy delay of

15   continued 2004 deposition of the Debtor, and that's beyond the

16   control of the Trustee.  Therefore, the Court is going to

17   grant the Motion.

18           All right.  Let's move on to the Motion to approve

19   the settlement.  This is the meatiest one today.  I have the

20   Trustee's moving papers.  I have Sun National Bank's limited

21   objection.  I have Isaac Franco's objection.  I have the

22   Trustee's response.  I have the Creditors Committee support;

23   Mr. Franco's supplemental objection; support by Joseph Dwek

24   and the Adjmi Group.  I have a response by HSBC and a further

25   response by the Debtor.

1      That takes us up and through about 5:00 o'clock on

2  Friday.

3      Why doesn't Trustee's Counsel begin.

4      MR. TESTA:  Good morning, Your Honor.

5      The Chapter 11 Trustee is very pleased to be before

6  Your Honor today in what he views as the most significant

7  achievement to date during the course of these cases.

8      The Trustee has, as Your Honor has noted, filed a

9  Motion on proper notice to all Creditors.  He was compelled to

10  file a response to certain statements that were made by Mr.

11  Franco, a Defendant in an adversary action, whose claim has

12  been challenged.  We strongly believe that the settlement that

13  we set before Your Honor falls below the lowest point in the

14  range of reasonableness.  We are prepared procedurally to

15  present a proffer, if Your Honor would so like, or we can be

16  much briefer and just highlight the main points of the

17  settlement.

18      THE COURT:  Go ahead and do the proffer.

19      MR. TESTA:  Yes, Your Honor.

20      If Mr. Stanziale were to testify today, he would

21  testify as follows:

22      Mr. Stanziale would testify that he is the duly-

23  appointed, Chapter 11 Trustee of the Bankruptcy case of In Re:

24  Solomon Dwek and all of its 74 jointly-administered cases.

25      That prior to the bankruptcy proceeding, a State

Decision                                                    84

1        MALE VOICE:  Thank you.

2        MR. BAKER:  Your Honor, we will submit a revised

3  form of Order that correctly shows Miss Pacheco's ordered

4  paragraphs.

5        THE COURT:  Okay.

6        MR. BAKER:  Thank you.

7        THE COURT:  Thank you.

8        MS. PACHECO:  Thank you, Your Honor.

9        THE COURT:  And, Counsel, I don't mean to rush you,

10 but I do have another matter that will probably take two

11 minutes when they've been waiting for two hours.

12        MR. BAKER:  Okay.

13        MALE VOICE:  Sorry.

14        THE COURT:  Okay.

15        MR. STANZIALE:  Thank you, Judge.

16        THE COURT:  Sure.

17                    *  *  *  *  *

                       I N D E X

MOTION

By Mr. B. Baker                  5         Granted:    8

RESPONSE

By Mr. A. Steinberg              5

    Mr. J. Posta                 6

MOTION

By Mr. J. Testa                    10          Granted:  78

RESPONSE

By Mr. W. Greenhalgh          14/66

   Mr. W. Usatine             15/55

   Mr. R. Usadi               17

   Mr. T. Neumann             17

   Mr. A. Steinberg           18/71

   Mr. C. Stanziale           52

   Mr. J. Testa               70

   Mr. B. Baker               70


CERTIFICATE:

        I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings in the
above-entitled matter.


\s\Kathleen Connolly
Kathleen Connolly                  AOC #441
**COLE TRANSCRIPTION AND RECORDING SERVICE**

Dated:  February 11, 2009

**Exhibit 4**

O78VGUO1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

        v.                     23 Cr. 118 (AT)

MILES GUO,

              Defendant.       Trial
------------------------------x

                               New York, N.Y.
                               July 8, 2024
                               9:00 a.m.

Before:

                   HON. ANALISA TORRES,

                               District Judge
                               -and a Jury-

                     APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  MICAH F. FERGENSON
     RYAN B. FINKEL
     JUSTIN HORTON
     JULIANA N. MURRAY
     Assistant United States Attorneys

SABRINA P. SHROFF
     Attorney for Defendant

PRYOR CASHMAN LLP
     Attorneys for Defendant
BY:  SIDHARDHA KAMARAJU
     MATTHEW BARKAN
     JOHN KILGARD

ALSTON & BIRD LLP
     Attorneys for Defendant
BY:  E. SCOTT SCHIRICK

O78VGUO1

1    Also Present:

2    Isabel Loftus, Paralegal Specialist, USAO
     Robert Stout, Special Agent, FBI
3    Jorge Salazar, Defense Paralegal
     Tuo Huang, Interpreter (Mandarin)
4    Shi Feng, Interpreter (Mandarin)
     Yu Mark Tang, Interpreter (Mandarin)
5    Barbara Robertson, Interpreter (Mandarin)
     Tuo Hung, Interpreter (Mandarin)
6    Peter Ginsberg, Attorney for Witness Jianhu Yi

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O78BGUO4                    Barnett - Direct

1  Q.  When you say signed out, were you ever given like a

2  sign-out sheet that someone would have to fill out to --

3  A.  That never came to fruition.  I was not having that.

4  Q.  You were not having that?

5  A.  No.

6  Q.  Mr. Barnett, do you recall learning anything about a

7  Bugatti?

8  A.  I remember hearing about it, but I didn't really have much

9  to do in regards to purchase or anything like that with it.

10  Q.  Do you know what it was for, whom it was bought?

11  A.  No, I don't.

12  Q.  Mr. Barnett, do you have any knowledge of an entity called

13  G/Clubs?

14  A.  Yes, I know about it.

15  Q.  What is G/Clubs?

16  A.  I can only tell you the way it was explained to me.  It's

17  basically a club that you paid for, almost like any type of

18  country club or anything, and you receive services for that,

19  whether it be -- I believe it was money off of clothing.  I

20  thought there was something about there were trips that you

21  could win or something like that.  I don't know the full extent

22  of what it entailed.

23  Q.  Mr. Barnett, did you know anything about any boats while

24  you worked for Mr. Guo?

25  A.  Yes.

O78BGUO4                          Barnett - Direct

1   Q.   What boats did you know about?

2   A.   There was the -- the only boat that I had any dealings with

3   was, I believe it was the Lady May Two, and there was a boat

4   that came later that was called Liberty.

5   Q.   What do you recall about the Liberty?

6   A.   I don't know much about the purchase of the Liberty.  I

7   remember when we it actually arrived, it had massive amounts of

8   problems with it.  It was not very seaworthy.  And the only

9   reason I know that was from speaking to the captain of the boat

10  at that time.

11  Q.   Did the fellow fighters or supporters use the Liberty?

12  A.   Yes.

13  Q.   When?

14  A.   It was different occasions to do broadcasting.  I couldn't

15  tell you the dates.

16  Q.   Do you know somebody named Prince Li?

17  A.   Yes, I do.

18  Q.   Who was Prince Li or is Prince Li?

19  A.   I don't know his official title.  To me he was kind of

20  almost what I would consider like a team lead for the

21  supporters.

22  Q.   And did he take the Liberty out with the supporters?

23  A.   I believe so, yes.

24  Q.   Now, Mr. Barnett, are you familiar with a property called

25  Mahwah?

O78BGUO4                    Barnett - Direct

1    A.  Yes.

2    Q.  Did you ever visit Mahwah?

3    A.  Yes, many times.

4    Q.  And when was your first visit to Mahwah?

5    A.  I don't believe I know the date, but it had to be early of

6    2022.  I don't recall the date.

7    Q.  Was that before or after its purchase?

8    A.  I went there once before I believe it was purchased.  I

9    don't know the date it was actually purchased, but I believe I

10   was there before.

11   Q.  Do you recall who you were there with?

12   A.  I was there with I believe -- well, I know it was Miles.  I

13   thought Yvette was there, and the owner of the Mahwah residence

14   was there.  I can't remember his name.

15   Q.  Did you ask Mr. Guo if he was going --

16           MR. FERGENSON:  Objection to the leading, your Honor.

17           MS. SHROFF:  It's a question.

18   Q.  Did you ask Mr. Guo if he was going to buy that property?

19   A.  No, I did not ask him that, no.

20   Q.  Did Mr. Guo ever volunteer to you for whom he was buying

21   that property?

22           MR. FERGENSON:  Objection to the hearsay.

23           THE COURT:  So, once again, this would be a yes or no

24   or I don't know or I don't recall kind of a question.  It's not

25   a question where you repeat what you were told.  You

O78BGUO4                    Barnett - Direct

1   understand?

2           THE WITNESS:  Yes, ma'am.

3           THE COURT:  Go ahead.

4   A.  Yes.

5   Q.  Were you surprised when Mr. Guo purchased that property?

6   A.  Yes.

7   Q.  Why?

8   A.  It just didn't seem like his type of property, but that's

9   just my own personal take on it.

10  Q.  And why did it not seem like his type of property?

11  A.  I always felt that Mr. Guo like properties that had an

12  intense amount of land.  This was, in this particular property,

13  even though it was on 12 acres, it was surrounded basically by

14  a neighborhood.  It wasn't very easily -- it wasn't easy to

15  secure due to that problem.  And for those reasons, it was

16  very, very ornate.  It just didn't seem like a property that I

17  felt that something he would purchase.

18  Q.  Did Mr. Guo ever tell you whether the property was for him

19  or for someone else?

20          MR. FERGENSON:  Objection.

21          THE COURT:  Here we go again.  This is one of those

22  questions where you can't say what he said.  You can say yes,

23  no, I don't recall.  I don't know.

24          THE WITNESS:  Yes, ma'am.

25  A.  Yes.

O78BGUO4                          Barnett - Direct

1   Q.  Mr. Barnett, were you asked similar questions such as the

2   ones I've just asked you by the government when you met with

3   them during proffer sessions?

4              MR. FERGENSON:  Asked and answered.

5              MS. SHROFF:  Not these questions.

6              THE COURT:  Overruled.  You may answer.

7   A.  I believe so, but I can't remember everything that I was

8   asked.

9              MS. SHROFF:  Well, let's show him 006 again.

10             MR. FERGENSON:  Your Honor, we'll stipulate that we

11  asked him about Mahwah just to speed things along.

12             MS. SHROFF:  Are they going to stipulate to what he

13  said back?

14             MR. FERGENSON:  No, because it's hearsay.

15             THE COURT:  I don't think so.

16  Q.  When you met with the government and you were asked these

17  questions, was your lawyer present?

18  A.  Yes, he was.

19  Q.  And after you answered all of their questions, did they

20  accuse you of not telling the truth?

21  A.  Not to me, or at least not to my attorney, not that I know

22  of.

23  Q.  And how many times did the government talk to you about

24  these topics?

25             MR. FERGENSON:  Asked and answered.

O78BGUO4                          Barnett - Direct

1      THE COURT:  Sustained.

2  Q.  Mr. Barnett, were you anticipating being a witness at this

3  trial for the United States Attorney's office?

4      MR. FERGENSON:  Objection.

5      THE COURT:  Sustained.

6  Q.  Were you told by the United States Attorney's office that

7  you would be called as a witness?

8      MR. FERGENSON:  Objection.

9      THE COURT:  Sustained.

10  Q.  Mr. Barnett, when did I first reach out to you?

11  A.  I believe it was after I received a subpoena to testify.

12  Q.  I know, but when, this month, last month?

13  A.  Last month, right, yeah, June I believe.

14  Q.  You remember which week of June?

15  A.  No, I don't.  I'm sorry.

16  Q.  Mr. Barnett, in all the times that you worked for Mr. Guo,

17  did he live at the Mahwah facility?

18  A.  No, he did not live there.  He stayed there, but he did not

19  live there.

20  Q.  What was the longest period of time that he ever stayed

21  there?

22  A.  I believe about four or five days at most.

23  Q.  And what did he do during those four or five days?

24  A.  Mostly he would broadcast for the most part.

25  Q.  Did you ever see Mr. Guo's wife at Mahwah?

```
 1                    INDEX OF EXAMINATION

 2   Examination of:                        Page

 3    LAI DAI

 4   Direct By Ms. Shroff . . . . . . . . . . . .5326

 5   Cross By Mr. Horton  . . . . . . . . . . . .5338

 6   Redirect By Ms. Shroff . . . . . . . . . . .5372

 7    THOMAS BISHOP

 8   Direct By Mr. Kamaraju . . . . . . . . . . .5381

 9   Cross By Ms. Murray  . . . . . . . . . . . .5396

10   Redirect By Mr. Kamaraju . . . . . . . . . .5409

11   Recross By Ms. Murray  . . . . . . . . . . .5410

12    GERALD SCOTT BARNETT

13   Direct By Ms. Shroff . . . . . . . . . . . .5411

14   Cross By Mr. Fergenson . . . . . . . . . . .5480

15    LEANNE LI

16   Direct By Ms. Shroff . . . . . . . . . . . .5495

17   GERALD SCOTT BARNETT

18   Cross By Mr. Fergenson . . . . . . . . . . .5506

19   Redirect By Ms. Shroff . . . . . . . . . . .5535

20                    DEFENDANT EXHIBITS

21   Exhibit No.                        Received

22    67061  . . . . . . . . . . . . . . . . . .5420

23    DX 60678A  . . . . . . . . . . . . . . . .5475

24    DX Z-02  . . . . . . . . . . . . . . . . .5394

25    Stip 3   . . . . . . . . . . . . . . . . .5395
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300